# CHARLESTON.

### KILLMYER v. WHEELING TRACTION Co.

Submitted January 31, 1911.  Decided March 11, 1913.

1.  CARRIERS—*Duties to Passengers.*
    Where an obstruction prevents further passage of a car, and another is, by the carrier, substituted therefor beyond the obstruction, the duty imposed by law upon a carrier for the safety of passengers is not thereby suspended, but continues unaffected while, without negligence on his part, and in exercise of ordinary care for his safety. a passenger is engaged in an immediate effort to reach the substituted car.  (p. 150).

2.  SAME—*Injuries to Passengers—Obvious Danger.*
    . If a passenger, thus transferring to the second car, follows the course suggested or designated by employes in charge of the first, and, without fault on his part, is injured thereon, such injury is not chargeable to his negligence, unless the danger of passage thereover is obviously apparent.  (p. 152).

3.  SAME—*Injuries to Passengers—Liability.*
    If, while thus engaged, a passenger substantially follows the course so designated, and, without fault on his part, is injured, the carrier is liable in damages therefor.  (p. 152).

4.  SAME—*Injuries to Passengers—Contributory Negligence.*
    Where the directions of an employe are within the scope of his authority. and obedience thereto will not expose a passenger to known or apparent danger which a prudent man would not incur, the passenger is justified in acting upon them, and is not

guilty of contributory negligence, although he may be injured in so doing.   (p. 153).

5.  SAME—*Injuries to Passengers—Directions by Employes—Authority.*

  Directions by an employe of a carrier in charge of the car, under the circumstances stated, are within the apparent scope of his authority.   (p. 153).

6.  SAME—*Injuries to Passengers—Care Required.*

  One in transit from one car to another, substituted therefor because of an obstruction, remains a passenger, and entitled to the protection that the highest degree of care on the part of the carrier can afford under the circumstances.   (p. 151).

7.  SAME—*Injuries to Passengers—Negligence.*

  Under the circumstances of this case, defendant was negligent in directing plaintiff, without light or guide, into a place the dangers of which were unknown to him and not obviously apparent to reasonable men under similar conditions.   (p 153).

Error to Circuit Court, Ohio County.

Action by Charles F. Killmeyer against the Wheeling Traction Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Erskine & Allison,* for plaintiff in error.

*Handlan & Reymann,* for defendant in error.

LYNCH, JUDGE:

By writ of error defendant seeks review and reversal of a judgment against it in this case.   The action is for recovery of damages for an injury to plaintiff.

While there is conflict in the evidence in some respects later noticed, it sufficiently appears that plaintiff, about midnight on the day of the injury, was a passenger on defendant's traction lines, and as such entitled to transportation from Moundsville to Wheeling, he having paid the necessary fare for the trip.   On the arrival of the car at Bogg's run, an intermediate point, those in charge thereof, finding the tracks submerged by reason of a freshet, directed plaintiff and other passengers to alight and to proceed on foot by a way designated by the employes to another of defendant's cars then, or soon to arrive, at a point on its lines beyond the obstruction, which would carry them to their destination, without further charge.   Finding the way so

designated also obstructed, they returned to the first car, when, as plaintiff seeks to prove and defendant to deny, the employes directed them to follow another course likewise designated in order to reach the second car, and that in following the same the plaintiff fell from a high wall and received the injury for which he seeks recovery. There is no denial that the employes directed the course first designated and abandoned. The defendant does deny, and to some extent supports the denial by the testimony of its employes, that any directions were given by the latter as to any course, and especially as to the one actually followed. It introduced evidence tending to prove that the course followed was so inherently and obviously dangerous that prudent men having due regard for personal safety would not follow it, even if directed so to do; that one other course was open and free from obstruction, in following which the injury would not have occurred. It also denies that plaintiff was a passenger, thus requiring its care for his safety while passing on foot between its cars. Substantially, though in brief, this statement fairly presents the material issues to which the proof in the record is directed, and upon a consideration of which the jury based its finding.

In view of the authorities examined, including those cited by counsel and others, the conclusion is that plaintiff was and remained a passenger, entitled to a high degree of care for his safety, from the time of his entry on defendant's car at Moundsville to his discharge therefrom in the city of Wheeling. Why not? He paid and it received the requisite fare. It accepted him as a passenger, and thereby engaged to carry him to his destination. In the meantime it also assumed that high degree of care for his personal safety imposed by law upon a common carrier. The defendant does not deny the relation of passenger and carrier during the time plaintiff was within its cars, or his right to transportation thereon before and after the obstruction. The relation is denied only during the time intervening and necessary for passage from one car to the other. This proposition does not find support in any authority cited or found upon examining this case. If a passenger on each car under the same and not a new contract, he was a passenger in the interval. The relation of carrier and passenger, with its

attendant duties and obligation, is not intermittent. It continues until completed, unless broken by some act of the passenger indicative of abandonment, or some conduct on his part justifying the carrier in terminating the relation. "Where the relation of carrier and passenger is once established, it continues until terminated by the voluntary act of the passenger, or the act of the carrier, under circumstances justifying its termination, and extends to the arrival of the passenger at his destination; and a temporary departure from the train for some good or reasonable cause, without the intent to abandon the transportation, will not end the relation." 6 Cyc. 541.

Where a passenger had a ticket entitling him to carriage beyond a station, at which in changing trains it was necessary to cross intervening tracks of the carrier, and in doing so he was injured, it was held that while "in transit from one train to the other he continued to be a passenger and entitled to the protection that the highest degree of care on the part of the defendant could afford under the circumstances." *Railroad Co.* v. *Hauer,* 60 Md. 449. The relation of carrier and passenger does not cease, although actual transit is interrupted by a wreck, and plaintiff in order to obtain a nearer view thereof voluntarily leaves the temporary station to which he has been transferred to await the arrival of another train. *Conroy* v. *Railroad Co.,* 196 Wis. 244. True, in the case cited recovery was denied, not because the relation had ceased, but because the defendant did nothing expressly or by implication to invite, entice or allure plaintiff to the place of injury. On the contrary, he voluntarily and unnecessarily exposed himself to a place where the danger was apparent and impending. A stockman on a freight train, with the consent of the railroad company, in charge of his stock, does not cease to be a passenger while making a necessary change from one caboose to another at the end of a division. *Railroad Co.* v. *Winters,* 175 Ill. 293. Nor does one lose the character of passenger if from motives of pleasure, curiosity or business he temporarily alights from the train at a regular station, intending to resume his journey thereon. *Layne* v. *Railroad Co.,* 66 W. Va. 607; *Parsons* v. *Railroad Co.,* 113 N. Y. 450; *Dwinelle* v. *Railroad Co.,* 120 N. Y. 117; *Railway Co.* v. *Coggins,* 88 Fed. 455.

The cases cited assert the principles stated, and, in addition thereto, hold that the carrier's duty requires it, during the continuance of the relation, to use that degree of diligence for the safety of its passengers proportionate to the danger to be avoided, and that its failure to do so is negligence. The authorities and the facts of this case abundantly establish the continuity of the relation of carrier and passenger from the time plaintiff entered defendant's car at Moundsville to his departure therefrom in Wheeling, and its liability to him for injury received during the existence of that relation, unless his negligence was the proximate cause of the injury.

To defeat plaintiff's recovery, defendant assumes the burden of proving that the injury occurred because of negligence attributable to him without which the injury would not have occurred. . This it undertook to do by showing, first, that it gave no instructions for reaching the second car, and, second, that if such instructions were given plaintiff disobeyed them and pursued a way other than the one usually followed by pedestrains. The evidence relating to directions by defendant, while not convincing beyond doubt, is nevertheless sufficiently clear to sustain the jury's finding in that respect. If instructions were in fact so given, the defendant can not reasonably complain if plaintiff undertook to follow them. The authorities hold, and reason approves the proposition, that a passenger may act upon the direction or invitation of trainmen in charge representing the carrier, unless it is apparent that to do so would imperil his safety. This holding finds expression in 4 Elliott on Railroads, § 1643, in this language: "Where the directions of the employe are within the scope of his authority, and obedience to them will not expose a passenger to known or apparent danger which a prudent man would not incur, the passenger is justified in acting upon them, and is not necessarily guilty of contributory negligence, although he may be injured in so doing." *Dwinelle* v. *Railroad Co., supra; Railroad Co.* v. *White,* 99 Tex. 359, 89 S. W. 746; *Newcomb* v. *Railroad Co.,* 182 Mo. 687.

*Fowler* v. *Railroad Co.,* 18 W. Va. 579, holds that "if defendant has by its own act thrown plaintiff off his guard, and given him good cause to believe vigilance is not needed, the lack of vigilance on his part is no bar to a claim for damages."

2 Hutch. Carr., §1126, 1129, 1195, 1221, 1222; *Irish* v. *Railroad Co.*, 4 Wash. 48, 31 Am. Dec. 899; *Railroad Co.* v. *Thomas*, 79 Ky. 83, 42 Am. St. 208; *Olson* v. *Railroad Co.*, 45 Minn. 536, 22 Am St. 749. "Where a passenger is requested either expressly or by implication to leave a car without assistance, and to find his way unaided back to the station, during which time he receives an injury, the carrier is liable." 2 Hutch. Carr., §1126. A brakeman, on a freight train in part blocking a public street, informed plaintiff he had time to pass while the train was standing. and in attempting to pass he was injured. The appellate court sustained the judgment therefor, saying that "what the brakeman said was not an invitation or a command; it was a statement of fact, of which a stranger might properly believe the brakeman had knowledge." *Scott* v. *Railroad Co.*, 112 Ill. 54.

Many of the foregoing cases, at least indirectly, indicate that directions by those in charge of the carrier's trains or cars are within the scope of the employes' authority. As the representatives of the employer, it is permissible to assume that in giving directions they act within the scope of such authority. It has been held that while a brakeman on a mixed train may ordinarily have no authority to give directions, yet if an emergency should arise, in which the life of a passenger is in imminent peril, the nature and purpose of the employment would imply his authority to give directions to prevent injury. If he acts within the apparent scope of his authority in giving directions, the passenger may rely thereon. 3 Hutch. Carr., §§1221, 1222.

Even if it be true, according to defendant's contention, that no instructions or directions were given in this case, it can not, in view of the other facts clearly proven and the authorities cited, absolve itself from liability. How can it reconcile its conduct with a proper discharge of the duty legally imposed, whereby it must exercise a very high degree of care for the safety of those whom for hire it undertakes to carry from one place to another? If it did not explicitly direct plaintiff into a safe place, it should have done so, and its failure is negligence. No authority excuses it. On the contrary, an examination of those cited warrant the conclusion that a proper discharge of its

. duty to plaintiff, under the circumstances of this case, required it to do more than merely direct. They require the highest degree of care to avoid injury in dangerous situations. In view of the hour, midnight, the impending darkness, the danger in passage from car to car, it should at least have provided a light or guide, neither of which was provided. It left its passengers to grope their way as best they could through unknown paths, over railroad tracks, piles of ore, and other obstructions, wherein plaintiff received injury.

Its effort to show the existence of an unobstructed way, in which if pursued injury would not have occurred, was equally unavailing, because not sustained by proof. Even if sustained, it would not afford reasonable excuse for its neglect of duty. Witnesses examined by both parties testify to the dangers incident to passage on either route, that traveled by plaintiff and that on which defendant relies as the safe course. Those for plaintiff say the former way is the least dangerous. Some of defendant's witnesses agree to that conclusion. One of them, Phillip Kuntz, who according to his statement had lived near both routes for thirty-eight years, speaking of the latter says: "I would not walk it myself, at twelve o'clock on a dark night; it would not be safe; it would be very dangerous."

As stated, the evidence is conflicting and contradictory; and upon submission to it the jury was authorized to find, and we must assume did find, the facts in conformity with plaintiff's proof. Its verdict must therefore remain undisturbed, unless clearly wrong. The conclusion reached here is that it is not apparently erroneous, when considered in light of the proof and the legal principles applicable thereto.

The defendant complains also of the trial court's rulings upon its demurrer to the declaration, its objections to evidence admitted for plaintiff, and evidence offered in its behalf and excluded. An examination of the declaration fails to disclose any infirmity or defect therein rendering it demurrable. It also insists that there was a variance between the allegations of the declaration and the proof. True, there is a degree of variance between some allegations of place and circumstances of the injury and the evidence pertaining thereto; but there is no substantial defect in this particular of which the defendant may

reasonably complain. It is a technical defect, and, if any, therefore unavailing after full and fair trial resulting in substantial justice. Defendant has not in any manner directed attention, in argument or brief, to any evidence rejected or admitted over its objection. Hence, no duty requires search therefor, or consideration thereof if found. The same statement is true as to the instructions of which it complains. These, however, upon examination, appear to have been properly acted upon by the trial court.

For reasons stated herein, the conclusion reached is that there is no error in the judgment requiring reversal. It is therefore affirmed.

*Affirmed.*