# CHARLESTON.

James K. Keathley *v.* Chesapeake & Ohio Railway Co.

Submitted November 11, 1919.    Decided November 18, 1919.

1.  Master and Servant—*Declaration in Suit Under Federal Employers' Liability Act Sufficient.*

    A declaration in a suit by an employee against a common carrier, for personal injuries, under the Federal Employers' Liability Act, which avers facts sufficient to show defendant was operating a train in interstate commerce and alleges also that plaintiff was employed as a brakeman on such train and was then and there engaged in interstate commerce, is good on demurrer, without other facts alleged to show such interstate employment.

2.   CONTINUANCE—*Absence of Witness—Direction Where State-
     ment of Witness is Admitted.*

The judgment of the trial court overruling a motion for a
continuance, based on the absence of a witness, being ad-
dressed to the sound discretion of the court, will not be re-
versed when it is doubtful whether the moving party has
used due diligence, and whether the presence of the witness,
not served with summons and absent from the country in
the military service, can be obtained or his deposition pro-
cured for the succeeding term, and the court with the con-
sent of the opposite party, obtained on condition of continuing
the case without such consent, permits the use of an ex
parte statement of the witness, made before suit, to be read
in evidence to the jury.   (p. 177).

3.   MASTER AND SERVANT—*Contributory Negligence—Admissibility
     of Evidence to Impel Implication of Negligence.*

Where in such action two of the questions before the jury
were whether the plaintiff at the time of his injuries was
observing due care, or was guilty of incurring the risk of
open and apparent dangers by stepping on a parallel track
behind a train going in the opposite direction to the one on
which he was employed, and in front of a motor car follow-
ing such train, in discharge of duties connected with the
unloading of an intrastate car, and which truck he did not
in fact see, evidence of a custom among employees using such
motor trucks to keep a safe distance behind the train they
were following, to avoid injury to themselves and others,
was admissible as tending to repel the imputation of want
of due care and incurrence of such risk by plaintiff.   (p. 179),

4.   SAME—*Evidence—Contributory   Negligence — Assumption   of
     Risk—Action Under Federal Employers' Liability Act.*

And on the trial of such an action the testimony of one or
more of the witnesses, including those employed on the motor
truck doing the injury, that plaintiff with his back to the
truck and going in the same direction, did not in fact see
the on-coming truck, was competent and admissible on the
question whether plaintiff was observing due care or had as-
sumed the risk of open and apparent dangers.   (p. 179).

5.   DAMAGES—*Brakeman in Interstate Commerce—Measure—Evi-
     dence.*

The measure of damages in an action by an injured em-
ployee against a carrier engaged in interstate commerce is
such sum as will fully and fairly compensate him for his
pain and suffering, his mental anguish, the bodily injury sus

tained by him, his pecuniary loss, his loss of power and capacity to work, and its effect upon his future; and on these questions evidence of the wages he was receiving at the time he was injured, and what he should have been receiving in the same employment at the time of the trial, was properly submitted to the jury. (p. 179.)

6. MASTER AND SERVANT—*Admissibility of Rules of Others as Bearing on Question of Negligence.*

When one of the issues before the jury is whether a common carrier has been guilty of negligence in not adopting and enforcing proper rules for operating motor trucks, evidence that other carriers had found it necessary or proper to adopt and enforce such rules, is proper to go to the jury on the question of negligence on the part of the defendant in the premises. (p. 179).

7. COMMERCE—*Employe Engaged in Interstate.*

If an employee at the time of his injury is engaged in interstate commerce, the fact that at the particular instant of his injury he was bent on or actually engaged in handling an intrastate shipment, will not necessarily characterize his employment as intrastate, if the discharge of his duty in that behalf also pertains to the operation of a train in interstate commerce. (p. 180).

8. DAMAGES—*Instruction—Limiting Verdict to Damages Sued on.*

An instruction to the jury limiting the verdict, if for plaintiff, to the damages sued for, is not erroneous as suggestive of an improper basis of recovery. (p. 181).

9. MASTER AND SERVANT—*Instruction Negativing Assumption of Risk by Employe Engaged in Interstate Commerce.*

An instruction on behalf of an interstate employee intended to negative assumption by him of an extraordinary risk and hazard but omitting the proviso "unless open and apparent," is not erroneous where such risk and hazard, by negligence of the defendant, was suddenly created, and he did not in fact see the danger, and had the right to assume and did assume he would not be subjected to such extraordinary danger as resulted in his injury. (p. 181).

10. APPEAL AND ERROR—*Trial—Argument of Counsel—Time and Mode of Objection.*

Improper remarks of counsel for plaintiff in argument to the jury, supposed to be detrimental to defendant, should be promptly excepted to, and though objection be thus made by opposing counsel, accompanied by a motion to direct a ver-

dict for defendant, denial of such motion will not constitute
reversible error, unless the court refuses on motion or by
instruction to direct the jury to disregard such improper
remarks. (p. 185).

Error to Circuit Court, Cabell County.

Action by James K. Keathley against the Chesapeake &
Ohio Railway Company. Judgment for plaintiff, and defend-
ant brings error.

*Affirmed.*

*B. Randolph Bias,* for defendant in error.

*Fitzpatrick, Campbell, Brown & Davis,* for plaintiff in
error.

MILLER, PRESIDENT:

Defendant complains of the judgment against it in favor of
plaintiff for twenty-five thousand dollars, for personal injuries
sustained by him, while employed as a brakeman, predicated on
the Federal Employers' Liability Act.

The first point of attack is that the declaration, in one count,
challenged by demurrer, overruled, is insufficient to support the
judgment, in that it does not sufficiently aver that plaintiff, at
the time of sustaining his injuries, was engaged in interstate
commerce. It is averred that defendant was at that time owner
and operator of a railroad extending from Newport News, in
Virginia, to and through West Virginia, and into the states of
Kentucky and Ohio, with locomotive engines, freight cars, pas-
senger and caboose cars, gasoline motor cars, and other railroad
equipment and rolling stock, and was at the same time a com-
mon carrier by railroad engaged in commerce between the states
of Virginia, West Virginia, Kentucky and Ohio; and that
plaintiff at the time of sustaining his injuries was employed as a
brakeman for hire on one of defendant's freight trains, known as
"Extra 226", a local freight train running from Handley,
West Virginia, to Huntington, West Virginia, and was then
and there engaged in commerce between the states aforesaid. It
is not contended that the facts averred with respect to defend-
ant are insufficient to show it a common carrier and so en-
gaged in interstate commerce, but that no facts are alleged re-
specting the employment of plaintiff showing that he when

injured was engaged in interstate commerce. It is contended that in such an action facts showing that at the time of the accident defendant was engaged in interstate commerce must be averred. This is the law. 2 Roberts Federal Liabilities of Carriers, § 682; *Easter* v. *Virginian Railway Company,* 76 W. Va. 383. The argument is that it is not sufficient simply to aver in connection with the facts averred respecting the defendant, as the declaration does in this case, that plaintiff was working on one of defendant's freight trains, and at the time of his injuries was engaged in interstate commerce. We think the point too refined and technical. The declaration in the Easter Case, which was held good on demurrer, was substantially like the one we have here. The statute itself, Barnes' Federal Code, § 8069, renders a common carrier by railroad, while engaged in commerce between the states, liable in damages to any person suffering injury while he is employed by such carrier in such commerce, resulting in whole or in part from the negligence of any of the officers, agents or employees. We think the declaration satisfies every requirement of the statute, and of the rules of good pleading, as construed by the authorities cited. 2 Roberts Feder-Liabilities of Carriers, § 689; *Grand Trunk Western Ry. Co.* *Lindsay,* 233 U. S. 42; Thornton's Federal Employers' Liability Act, (2nd ed.), § 201. We hold the declaration good, and overrule the point of error.

It is next complained that the court should have sustained defendant's motion for a continuance, based on the absence of the witness Waggoner, the fireman on the engine drawing the freight train on which plaintiff was employed. Both sides had summoned this witness, the defendant on May 4, the plaintiff on May 8, preceding the trial begun June 4, 1918, and both learned about the same time, May 23, that Waggoner was enlisted in the military service. After trying to locate him at one or more of the military camps, in Ohio and Virginia, and to take his deposition, defendant learned a few days before the trial that he was in France or on the way there. On the hearing of the motion it was shown that defendant had Waggoner's statement in writing taken before suit, as to what he professed to know and what defendant expected to prove by him. It was also shown in opposition to the motion that plaintiff himself was in a pre-

carious condition owing to his injuries; that his physicians, also witnesses, and other witnesses for plaintiff, some of them members of the train crews, were liable to be called into the military service of the United States, and their evidence lost to plaintiff, and plaintiff's rights thereby and otherwise prejudiced. But on the face of the showing the court was of opinion to continue the case unless plaintiff's counsel would consent that the written statement of Waggoner might be introduced in evidence in lieu of his deposition, which was agreed to, and over objection of defendant the parties were ruled to trial. On the trial the defendant made use of this ex parte statement of Waggoner by introducing it as evidence, so that the defendant had the full benefit thereof on the trial, without any opportunity given plaintiff of cross-examination. Inasmuch as there were numerous other eyewitnesses to the accident, including the trainmen, as well situated and as well qualified and competent to testify to the facts as Waggoner, and defendant was given the benefit of his statement, we can not see that defendant was seriously prejudiced by the ruling of the court. It was not shown on this motion that defendant could not prove the same facts by other witnesses, that it expected to prove by Waggoner. The contention was that the place he occupied as fireman on the engine gave him better opportunity to see and observe the occurrences than any other witness. The statute, section 6, chapter 131, Code, entitles a party to a trial at the next term after an order entered at rules, for an inquiry of damages, has been entered, unless good cause be shown for a continuance. A motion for a continuance is always addressed to the sound discretion of the court, and unless prejudice be shown by its action on such motion, the judgment should not be reversed. *Davis & Moore* v. *Walker,* 7 W. Va. 447. In *Riddle* v. *McGinnis,* 22 W. Va. 254, it was decided generally that to entitle a party to a continuance on the ground of the absence of a witness, not only must it be shown that due diligence was observed to obtain his presence, but also that the same facts can not be proved by other witnesses present, and that the party can not safely go to trial without the absent one. This is the general rule everywhere. 13 C. J. 151, § 61. The affidavit for a continuance in *Doane* v. *Pulp & Lumber Co.,* 77 W. Va. 454, cited and relied on by defendant's

counsel, fully complied with the requirements of the rule. The evidence on the motion for a continuance in this case does not satisfy these requirements. Besides, as the defendant had the benefit of the ex parte statement of Waggoner, it could not have been prejudiced by his absence. This point of error is also overruled.

The next point of attack is that improper testimony was admitted to defendant's prejudice. The only testimony of this character pointed out is: First, that of the plaintiff and his witnesses, Dean and Clark, trainmen, and one J. L. Conners, who testified in effect that there was a custom among the operatives of motor cars, one of which struck plaintiff and did him the injuries complained of, to run them a certain or safe distance behind the trains they happened to be following, and gave their opinions that it was unsafe to operate such cars otherwise; Second, that the witness Heslep, one of the men on the motor car that struck plaintiff, a carpenter in the employ of the defendant company, was permitted to testify that Keathley did not see the approaching motor car. Not only did Heslep so testify, but Keathley stated the same thing, and Waggoner, in his statement introduced by defendant, also said the same thing. Can it be presumed that if plaintiff did see the car, he would have immediatelly stepped on the track in front of it, to be run over and killed or injured? Besides, how can defendant complain of this evidence, when it introduced the same fact into the record by the statement of Waggoner? Third, that the witness Conners was allowed to testify to the amount of wages Keathley was earning during the last few days he was employed; Fourth, that another witness, Winters, over objection was permitted to testify that other railway companies had adopted rules governing the operation of motor cars, designed to avoid dangers to employees and others, but to offset which defendant was permitted to show by several other witnesses that some railroads operated motor cars without such rules.

Recurring to the first class of testimony, relating to the custom of employees in operating motor cars, Dean says: "It was the custom to stay far enough behind so that you will not injure yourself or any one else who might step on the track behind the train you are following;" and he gave it as his opinion that

it would require three hundred feet or more. Clark said: "Yes, there is a custom to keep a safe distance behind the train. What I would call a safe distance would be from three hundred feet to as far back as you can get behind the train." Conners said: "The practice and custom is from three hundred to five hundred feet following a passenger train. That we are led to believe among ourselves that it has been made a custom by seeing them daily run in that distance." Plaintiff himself testified: "The custom and practice of all men operating motor cars, or motor trucks, on the railroad was to stay at a safe distance behind any train which they were following, at least three hundred feet, is my judgment."

The manifest purpose of this testimony, in the absence of any rules of the railway company on the subject, was to excuse plaintiff of the imputation of contributory negligence, going to reduce the amount of his recovery as provided in the federal statute, and also of the imputation of wilfully incurring the risk of open and apparent dangers. Plaintiff's duty on a live local train was to go back and spot a car containing empty oil barrels and assist in unloading them at an oil station situated immediately across the track from his train. Necessarily this called for prompt action, for trains run on schedules, and if there was such a custom as claimed, did he not have the right to assume that the passenger train on the opposite track, going in the direction he was required to go, would not be followed so closely by a motor truck as to strike him the moment he stepped behind the train? The conductor of his train saw the motor car behind the passenger train when at a station some seventeen hundred feet ahead, nevertheless he assumed the motor truck would stop, or stay far enough behind for safety, but it did not, and he barely escaped injury as the truck passed him behind Keathley. After all, was this custom anything more than the creature of common sense and forethought, for the protection of the lives and limbs of employees? Suppose the men on the truck had run into the rear end of the preceding passenger train, would not the defendant company have been liable for failure to adopt rules governing such operations, showing the necessity for some rule or custom on the subject? We think there can be no doubt of this obligation. In *Schaffner* v.

*National Supply Company,* 80 W. Va. 111, we decided, point 12 of the syllabus, that where the question for determination in a particular case is whether or not there was want of due care, evidence of the customary and usual way of doing the act complained of as being negligently done, is admissible. See also, *Easter* v. *Virginian Railway Co., supra,* page 398. We think plaintiffs, to repel the imputation of assuming the risk of a plain and obvious danger was entitled to show that there was such a custom as the witnesses proved, and as to which they were not contradicted.

Second, and as pertaining to the same object on the part of plaintiff, we think it was competent for him to prove by the witness Heslep, in corroboration of his own evidence, that he did not see the on-coming motor car. It is said the witness could not have known this fact, situated as he was on the front end of the car. Why was he not competent to so state? He says Keathley was moving in the direction of the passenger train with his back to him. In that position it would have been next to impossible for Keathley to see the motor truck. As already observed, Waggoner says Keathley did not see the truck. He did not even hear Waggoner's calls, nor those of the men on the truck. He may have been guilty of contributory negligence in not looking both ways, but he was not bound to look; he had the right, we think, to depend on some rule or custom for his protection. Contributory negligence is not a defense under the federal statute. It may go in to reduce the recovery, but not to defeat the action.

The third class of evidence, that relating to the wages plaintiff was earning when injured, and what would have been his earnings on the new scale in force at the time of the trial. The objection was that by this evidence plaintiff was laying the foundation for a recovery not warranted by the spirit of the act of Congress, which was intended to be compensatory, not speculative and indefinite. On this theory of defendant's counsel, what character of evidence was better calculated to enlighten the jury on the subject of compensatory damages than the wages plaintiff was receiving at the time he was injured; and on the theory of his continuance in the service, what evidence was better calculated to furnish a basis of what his future

earnings would be? In determining the amount of damages in cases like this, as decided by the Supreme Court of the United States, the jury may take into consideration the pain and suffering of the plaintiff, his mental anguish, the bodily injury sustained by him, his pecuniary loss, his loss of power and capacity to work, and its effect upon his future, as to them may seem just and fair. *Chesapeake & Ohio Railway Co.* v. *Carnahan,* 241 U. S. 241, 243-4, and cases cited; 8 Fed. Stat. Anno. (2nd ed.), note p. 1322. We see no error in this ruling of the court.

Lastly, as to the fourth class of evidence objected to, namely, that other railway companies had rules for operating motor cars. As already shown the defendant company was allowed to introduce evidence that some railway companies operated motor cars without rules promulgated in relation thereto. We decided in *Robinson* v. *City & Elm Grove Railroad Company,* 71 W. Va. 423, that a railway company is bound to adopt, promulgate and enforce rules necessary to reasonably protect its servants from the negligence of fellow servants or otherwise, and that when its failure to do so is the proximate cause of injuries sustained, it may be made to respond in damages therefor. The declaration in this case charged negligence in the omission to adopt and enforce rules as one of the grounds of liability. Whether such rules were reasonably necessary in a particular case is generally a question for the jury, and on this question of fact evidence that others engaged in the same business have found it necessary or prudent to provide rules for the management of the business, the failure of the master to provide such rules is evidence of negligence. 26 Cyc. 1159, and cases cited; Labatt on Master and Servant, (Ed. 1904), § 213; *Schaffner* v. *National Supply Company, supra.* We think the evidence so limited was admissible and find no error in the rulings of the court thereon.

We have now to dispose of several points of error relating to the giving and refusing of instructions to the jury. Three instructions were given on behalf of plaintiff. Exceptions were taken to all of them, but the main contention relates to number two. Concerning the first the only criticism is that it assumes that plaintiff at the time of his injuries was engaged in interstate commerce. It was agreed and stipulated by counsel that de-

fendant in operation of the train was engaged in interstate commerce. Plaintiff was a brakeman on that train, and necessarily engaged in interstate commerce. The fact that the business on which he was bent at the particular instant of his injuries, the unloading of oil barrels, was an intrastate shipment, can not characterize his employment in general, so as to deny him recovery under the federal statute. We decided in *Dumphy* v. *Norfolk & Western Railway Company*, 82 W. Va. 123, that an engineer employed to instruct other engineers how to operate electrical motors, injured when attempting to board a train drawn by a steam locomotive, as he was required to do in order to get back to his initial point of service the next day, was entitled to recover under the federal act, though not otherwise employed on that train. In *Erie Railroad Company* v. *Winfield*, 244 U. S. 170, it was held that an employee, while leaving the yard after his day's work, was still engaged in interstate or intrastate commerce according to the fact, and we decided the same thing in *Easter* v. *Virginian Railway Company, supra*. On a parity of reasoning, if the plaintiff was an interstate employee on his train, how can it be said that he ceased to be such because at the particular moment he was about to take part in unloading an intrastate load; his duty in respect to this shipment nevertheless pertained to the operation of an interstate train, for it could not proceed until that duty had been discharged. .

The only objection urged to instruction number three is that the last clause limiting recovery to the sum sued for is suggestive of excessive damages. But it is not claimed that if plaintiff is entitled to recover at all, the amount of the verdict is excessive, nor was the motion for a new trial predicated on any such ground. We do not see how, considering the character of plaintiff's injuries, the verdict could be said to be the result of improper suggestions by the court in this instruction. Besides, it is quite proper for the court by instruction to limit the jury to the amount claimed in the declaration.

As stated, the main reliance for reversal is on instruction number two. This instruction reads: "The court instructs the jury that the plaintiff, Keathley, did not assume any extraordinary risks and hazards caused by the negligence of the defendant or any of its officers, agents or employees, and if from

all the evidence adduced the jury believe the injury to the plaintiff was caused by such extraordinary risks and hazards, resulting from such negligence and further believe that the plaintiff had not notice or knowledge of such risks and hazards then the jury should find for the plaintiff." The only point of error urged is that it omits to condition the proposition relating to extraordinary risks, by excepting those which are open and apparent and which must be regarded as having been negligently incurred and assumed by the plaintiff. It is undoubtedly the law, in actions under the federal statute, that if an employee knowingly incurs the risk of open and patent dangers though extraordinary, he assumes such risks as well as ordinary ones, and is not entitled to recover for the injuries so sustained; for then his negligence and not that of the employer becomes the proximate cause of his injuries, relieving the master of liability therefor. *C. & O. Railway Co.* v. *De Atley*, 241 U. S. 310; *Dumphy* v. *N. & W. Ry. Co., supra.* In this case it is fully proven as a matter of fact that plaintiff did not see the on-coming car. If he had looked and had seen it in time, and then deliberately stepped on the track in front of it, giving the servants in charge of the car no time to stop it before striking and doing him the injury, a case of open and obvious danger would be presented. But we think the plaintiff had the right to assume, either upon the custom proven, or by proper rules regulating their movements if they were necessary, that defendant would not subject him to such extraordinary risks and hazards. We so decided in *Dumphy* v. *Norfolk and Western Railway Co., supra,* point three of the syllabus, as did the Supreme Court of the United States in *C. & O. Railway Co.* v. *De Atley, supra,* and in other cases there cited. The case here presented is different from those involving known defects in machinery with which an employee is working, or permanent dangers about the places of work, of employees, and with which they are continually made aware. Here the danger and hazard incurred was not of that permanent character, but was one suddenly imposed by the negligent operation of a dangerous agency, without rules for safety, and if the evidence is to be believed, perhaps also with defective appliances for its control. There was considerable evidence that the brake on the motor car was defective, and for

that reason uncontrollable by the servants in charge of it, wherefore the injuries to plaintiff. As we view the facts there was no call for provisioning the instruction on the theory of open and patent dangers. If plaintiff, as we hold, had the right to assume that defendant would not suddenly subject him to the extrardinary risks and hazards, and he did not see them, as to which there is no evidence to the contrary, then the evidence did not justify the theory involved in the exception, and the instruction given was entirely proper.

The defendant proposed twenty-one instructions, of which number two, three, five eight, nine, eleven, twelve, fourteen and seventeen were given. The remainder, including number one, a peremptory instruction to find for defendant, were refused. We have examined all these instructions with care, and are of opinion that those given cover with great liberality the whole of defendant's theories of the case, and that those not given were either covered by those given, or propound propositions having no proper application to the facts upon which right of recovery depends. Certainly defendant has no ground to complain that the law of the case according to its theories was not sufficiently and liberally presented to the jury by the instructions given in its behalf.

During the argument before the jury counsel for the railway company took exceptions to some remarks of plaintiff's counsel, as follows·: "You gentlemen of the jury, put yourselves in the place of the plaintiff, in estimating damages; take into consideration what amount, under such circumstances, would compensate you if you were a young man in the bloom of health, with your wife, about to start on the sea of life." Manifestly this language was improper, but when spoken the only motion by opposing counsel was to direct a verdict for defendant. There was no request to the court to direct the jury to disregard the remarks of counsel, or subsequent instruction requested to counteract any prejudice to defendant, if any, according to approved practice. *Landers* v. *Ohio River Railroad Co.,* 46 W. Va. 492; *Lunsford* v. *Dietrich,* 93 Ala. 565, 30 A. S. R. 79; *Given* v. *Diamond Shoe & Garment Company,* —— W. Va. ——, decided at the present term. As the objectionable matter of the argument related to the quantum of the damages, and as the

verdict was not objected to on that ground, we see no substantial error in the rulings of the court thereon, on the motion for a verdict based on that ground.

It follows from the foregoing that the judgment must be affirmed.

*Affirmed.*