## CHARLESTON.

JOHN F. HOLTMAN *v.* NORFOLK & WESTERN RAILWAY COMPANY *et als.*

(No. 5791).

Submitted January 25, 1927. Decided February 15, 1927.

CARRIERS—*Railroad's Duty to Passengers Continues While They Are Transferring Under Its Direction From One Train to Another Because of Obstruction of Track.*

> The duty imposed by law upon a railroad company for the safety of its passengers is not suspended, but continues unaffected, while passengers are transferring, under the direction of the carrier, from one to another of its trains, in order to continue their journey which has been interrupted by an obstruction of the track.

(Carriers, 10 C. J. §§ 1050, 1051.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Trespass on the case by John F. Holtman against the Norfolk & Western Railway Company and others. Judgment for plaintiff against the named defendant, which brings error.

*Affirmed.*

*F. M. Rivinus, Reynolds & Reynolds,* and *Sanders, Crockett, Fox & Sanders,* for plaintiff in error.

*W. H. Malcolm* and *Ajax T. Smith,* for defendant in error.

LITZ, JUDGE:

Suing in trespass on the case, the plaintiff recovered a verdict and judgment against the defendant Norfolk & Western Railway Company (plaintiff in error) in the sum of $4,000 for personal injuries sustained as hereinafter detailed.

In the afternoon of August 25, 1925, a coal carrying freight train of defendant was wrecked near Wills, a flag station in Mercer County, West Virginia, tearing up both main line tracks for a distance of 250 feet and depositing coal and wreckage along the right-of-way. Several hours later plaintiff boarded defendant's passenger train No. 17 at Narrows, Giles county, Virginia, for passage west to Bluefield, West Virginia, reaching the wreck (about half way between Narrows and Bluefield) at nine p. m., a short while after the arrival of defendant's passenger train No. 8, going east from Bluefield.

In order for the passengers of each train to continue their journey without a delay of five or six hours, they were directed by the trainmen to transfer from one train to the other, so that train No. 8, by returning to Bluefield, could carry the passengers going west, and train No. 17, by returning toward Narrows, could carry passengers going east. The plaintiff, a man fifty-five years of age and weighing 228 pounds, testified that in going from train No. 17 to train No. 8 he fell on "some iron" lying across the route which an agent of defendant had directed him to take, permanently injuring his knee and shoulder; that the night was dark and there was not sufficient light by which to see obstructions in the

way.   J. K. Mullins, an elderly man traveling on train No. 17, stated that he was assisted from one train to the other by another passenger; that the "track was full of debris of all kinds" which the passengers were compelled to cross in going from one train to the other; that the night was dark and he could not remember seeing any lights to aid him in making the transfer.

According to the evidence of defendant's division superintendent, who had gone to the scene for the purpose of supervising the work of clearing the wreck and restoring the tracks, he, and the conductor and brakeman of each train, carried lanterns; and some of the wrecking car men with oil torches "were up there where the passengers walked around the wreckage, and also the electric headlight from the Bluefield wrecking car was shining down".   He could not say how the torches were distributed along the pathway provided for the passengers, and, when asked whether or not the pathway was free from dangerous obstructions, answered, "Yes, sir, it was cleared *as much as possible. There was no well defined pathway.*   It was the slope of the hillside, but as well as I can recollect there was nothing in there that would make it unsafe to walk".   The brakeman on train No. 17 testified that the way traveled by the passengers in making the transfer was fairly well lighted; and, when asked as to whether there were any dangerous obstructions in the pathway, stated:   "Not that I saw.   Of course, there was some coal scattered along there, but the way I went I didn't see anything that would be any danger to anybody that I know of".   He said further that the plaintiff, on reaching train No. 8, stated that he had fallen and "skinned his shin", and that he then helped him on the train.   The section foreman, who was employed at the wreck, but took no part in the transfer of the passengers, states there were "plenty of lights" and that "you could see the bank by the lights,—the wreck car and the carbon lights, and plenty of lights were there for any one to see to walk by".   The conductor of train No. 17 said, "There was a good deal of light there for the people to walk around"; that he assisted several passengers by the

wreck and that there were not sufficient obstructions in the way to prevent passengers from ''walking along all right''.

The giving of plaintiff's Instruction No. 5 and Instruction No. 2 prepared by the court, and the overruling of defendant's motion to set aside the verdict as contrary to the law and evidence, constitute the grounds of error assigned. The court's instruction No. 2 reads:

> ''The court instructs the jury that if they should believe from all of the evidence in this case that when the agents of the defendant company invited the plaintiff to go from one passenger train to another to be transferred, that the passageway from one passenger train to the other around the wreck was so dark that the plaintiff while traveling could not see any obstructions that might be in his path, and that by reason thereof he received the injuries complained of, then the jury will find for the plaintiff, unless the jury should further believe from all the evidence that the plaintiff was guilty of contributory negligence and that his own negligence contributed to his injury.''

Asserting that this instruction imposes upon the defendant the liability of an insurer, its counsel say: ''The instruction does not take into consideration the situation and circumstances under which the transfer of the passengers was made, but, as will be seen, it announces the broad rule that, under any and all circumstances, and at any and all times, the defendant would be liable, if it was so dark that the passenger could not see any obstructions that might be in his path, regardless of what the defendant had done,—regardless of the fact that the transfer was made in a sparsely settled section of the country, where the defendant had made reasonable provisions for the emergency and, in making the transfer, exercised diligently, carefully and skilfully the appliances and facilities at hand''. This instruction certainly does not place upon the railroad company an unreasonable obligation. What rule of law would relieve it from liability in the case presented by the instruction? The fact that the transfer of the passengers was made in a sparsely settled section of country,

where it would likely be difficult to select a passway free from obstructions, would make it more imperative on the railroad company to provide sufficient light for the guidance of the passengers over or around the obstructions.

Under defendant's instruction No. 5 the jury were told, in estimating plaintiff's damages to consider the loss of time at his occupation, if any, and to award such damages as in their opinion "will fairly and fully compensate him for the injury complained of not to exceed $25,000, the amount sued for". This part of the instruction is criticized because it does not refer to the evidence, and, according to defendant's interpretation, impliedly authorizes a verdict to the extent of the damages stated in the declaration.

In *Dalton* v. *Martin*, 102 W. Va. 595, 136 S. E. 47, it is held that an instruction on the measure of damages, which does not refer to the evidence as the basis of finding, is improper, but not reversible error.

Sustaining a verdict of $53,750, in an action under the Federal employer's liability act, for the death of a locomotive engineer, this Court recently said:

"The only thing seriously urged against either of these instructions relates to No. 2, which told the jury in effect that if they found for plaintiff they should assess her damages at such sum as would compensate the widow and the two children for the pecuniary loss sustained by the death of the decedent, and that their verdict should likewise include such sum as from the evidence would compensate for the conscious pain and suffering of the deceased sustained by him and before his death, *such total sum so found by them not to exceed $100,000.00.* The only thing urged against this instruction is that the part underscored practically told the jury that the 'bridle was off,' and that they were at liberty to do anything they chose within the $100,000.00, the amount sued for. We do not think this direction was improper. The practice here indulged in has had, if not the approval, at least the denial of reversible error therein, in the following cases. The effect of the direction was simply to limit the jury in its findings
103 W. Va.

to the amount sued for. *Keathley* v. *Chesapeake & Ohio Ry. Co.,* 85 W. Va. 173, 102 S. E. 244; *N. & W. Ry. Co.* v. *Earnest,* 229 U. S. 114, 33 S. Ct. 654, 57 L. Ed. 1096.''

*Looney* v. *N. & W. Railway Co.,* 102 W. Va. 40, 136 S. E. 262.

We cannot say, as a matter of law, that the evidence is insufficient to fix liability on the defendant. The evidence of its witnesses, alone, does not show very clearly that the passway was free from obstructions, and if the headlight and torches furnished sufficient light, why were lanters also used for piloting the passengers? Doubtless the lights were sufficient if they had been used properly by the defendant's agents. Quite a number of passengers were transferred from each train to the other. They should have been separated into groups if necessary to furnish each sufficient light to travel with safety. ''Where an obstruction prevents further passage of a car, and another is by the carrier substituted therefor beyond the obstruction, the duty imposed by law upon a carrier for the safety of passengers is not thereby suspended, but continues unaffected while, without negligence on his part, and in exercise of ordinary care for his safety, a passenger is engaged in an immediate effort to reach the substituted car. If, while thus engaged, a passenger substantially follows the course so designated and, without fault on his part, is injured, the carrier is liable in damages therefor.'' *Killmyer* v. *Wheeling Traction Co.,* 72 W. Va. 148, 77 S. E. 908, 48 L. R. A. N. S. 683, and note.

There is little complaint of the verdict as being excessive, and we find nothing in the record authorizing a reversal on that ground.

The judgment of the circuit court is

*Affirmed.*