STATE OF WEST VIRGINIA

*v.*

LAURENCE HUGH SETTE

(No. 13806)

Decided March 28, 1978.

*Tomasky & Friend, Irving Anolik* for appellant.

*Chauncey H. Browning,* Attorney General, *Gregory E. Elliott,* Assistant Attorney General, for appellee.

NEELY, JUSTICE:

This is a criminal appeal from the Circuit Court of Monongalia County in which the appellant, Laurence Hugh Sette, was convicted of being an accessory before the fact to murder in the first degree. The appellant allegedly procured the murder of his wife by inducing a young woman, Kathy West, to kill her. There are numerous errors which require that we reverse the conviction and order a new trial.

The appellant's wife was murdered on April 1, 1975 in Monongalia County, West Virginia. At that time the appellant was the manager of a McDonald's Restaurant located on University Avenue, Morgantown, West Virginia, where he had been employed for approximately one year. Kathy West had obtained employment at the McDonald's Restaurant, and soon thereafter became sexually involved with the appellant. This sexual relationship had been in progress for almost a year when the appellant's wife was shot twice in the head in the middle of the night while sleeping in her own bedroom.

Kathy West testified at the trial that the appellant wanted to marry her, and would have married her had he not already been married. According to Miss West, the appellant convinced her that his wife would not give him a divorce, or that a divorce would ruin him financially, and thus the plot to murder the wife arose. Miss West testified that the appellant devised the intricate plot, "the perfect crime," in which neither of the plotters would be caught by the police. The appellant, in allaying Miss West's fears, went so far as to tell her that her juvenile status would save her from punishment in the unlikely event she were caught. The plot consisted of the following: the appellant would be at work during the actual murder; he would leave his car for Miss West to use; he would leave the basement door of his house unlocked; he would leave a loaded rifle in the house; Miss West, who was already familiar with the appellant's house, would proceed from the basement to the second floor where the appellant's wife would be asleep in her

own bed and kill her; the rifle would be taken to a nearby bridge and thrown into the river; and, Miss West would misdirect the police at every turn, if she were questioned by them.

According to Miss West's testimony, everything went as planned. On April 26, 1975, after becoming bewildered by the appellant's actions, and being emotionally exhausted from the continuous need to lie, Miss West confessed to the murder. In the confession, she implicated the appellant as the mastermind behind the murder of Mrs. Sette. Miss West was allegedly promised no leniency, plea bargain, or immunity.

The appellant was arrested on April 26, 1975 and was charged with being an accessory before the fact to the murder. He denied the charge, but did admit to a torrid sexual relationship with Miss West. The appellant testified at trial that he had severed his amorous relationship with Miss West prior to the murder, but then admitted that the two had met after the murder and had engaged in sexual relations, as if nothing had changed.

The case was tried on July 10 through July 12, 1975 in the Circuit Court of Monongalia County and on July 14, 1975 the jury returned a verdict of guilty, as charged in the indictment, with a recommendation of mercy.

The appellant assigns and argues five points of error. He contends first, that he was denied a fair trial by the court's refusal to grant either a continuance or change of venue upon proper and timely motions. Second, he argues that the trial court erred by refusing to supply his trial counsel with a copy of the confession which the police obtained from Kathy West, who was the chief prosecution witness. Third, he asserts that the trial court erred in permitting the prosecutor, over timely objection, to introduce evidence that the appellant and Miss West had engaged in oral sex. Fourth, he contends that the trial court erred in refusing to allow the appellant to adduce testimony from a witness, Denman Kelley, concerning his encounter with Kathy West in the

county jail. Apparently, Mr. Kelley would have testified that Miss West told him the appellant had nothing to do with the crime charged. Fifth, and finally, he maintains that the trial court erred in allowing the introduction of photographs showing the dead victim and the scene of the crime which were gruesome and only tended to prove a fact already stipulated, namely that the victim had been shot. We shall handle the assignments of error *seriatim* in separate sections.

## I

The trial of Laurence Sette was voted the top news story of Morgantown, West Virginia, according to an article which appeared on December 28, 1975 in the *Dominion Post*, a newspaper of general circulation which is published in Morgantown. It was undisputed that the trial was preceded by substantial, pervasive, and inflammatory publicity, and that almost fifty percent of the jurors summoned for jury duty were disqualified because they had formed a conclusion concerning the case which they were unable to discard. Defense counsel carefully noted that in virtually all instances the reason for disqualification was apparently a belief in guilt, and defense counsel moved for a change of venue and for a continuance if the change of venue motion were denied. The court declined to grant either motion in spite of the appellant's counsel's strenuous argument for a change of venue, which included the presentation of a telephone public opinion poll conducted by a professor at West Virginia University indicating that a pervasive hostile climate toward the appellant existed in Monongalia County.

Ordinarily the question of a change of venue is reposed in the sound discretion of the trial court; that discretion, however, was clearly abused in this case by the trial court's denial of the motion for a change of venue. *State v. Wilson*, W.Va., 202 S.E.2d 828 (1974); *State v. Wooldridge*, 129 W.Va. 448, 40 S.E.2d 899 (1946). The case was in no respect an ordinary murder of the type which fills scores of volumes of the West Virginia

Reports. A young and apparently beautiful woman was allegedly murdered by the mistress of the victim's husband; both conspirators had been engaged in a torrid sexual relationship. Facts like these produce sensational journalism in and of themselves. In addition the public interest in the killing provided an irresistible invitation to the prosecuting attorney and law enforcement officers to try the case in the media.[1]

---

[1] Typical both of the media coverage of the case and of prosecution statements relating to the case are the following excerpts from a newspaper article and a transcription of a radio broadcast.

Morgantown *Dominion-Post*, April 27, 1975:

Laurence Sette, 24, husband of slain Elizabeth Ann Sette, and his 17-year-old girlfriend were arrested yesterday in connection with Mrs. Sette's April 1 murder.

Kathy June West of the Grafton Road yesterday confessed to the crime and implicated Sette as an accomplice before the fact, according to a statement from Prosecuting Attorney David Solomon. Solomon said Sette instigated the murder.

Solomon made the announcement on behalf of City Police Chief Bennie Palmer and himself. City and State Police have been investigating the murder since Sette discovered his 23-year-old wife's body at 4 a.m. April 1 in their Suncrest home.

Miss West, a Morgantown High senior, the daughter of Mr. and Mrs. Stanley West, confessed to the crime following a night-long interrogation, Solomon said.

The prosecutor said Sette "planned, advised, counseled and procured Kathy West to commit this murder which he instigated.

"Both contrived and planned the murder," Solomon said.

Miss West, an honor student at Morgantown High School, was charged with first degree murder.

Sette was charged with being an accessory before the fact in the first degree murder of his wife.

Solomon called this "one of the most exhaustive, intensive investigations in the history of this community."

In the statement from Miss West, who will be treated as an adult in the case, Solomon said she implicated Sette and gave a "confession" of the murder.

He said she admitted her part, saying Sette provided her with the weapon—a .22 caliber rifle—with which she shot Mrs. Sette twice in the head.

The girl was quoted as saying she threw the weapon into the Monongahela River from the Uffington Bridge shortly after the murder.

It would almost have been necessary for a resident of Monongalia County to be both blind and deaf for him not to have heard the sordid details of the case and to have formulated at least a tentative opinion. In most instances we can assume a prospective juror would hold a

Police began to search the river for the missing murder weapon at 2:10 p.m.; however, the search was called off at 4 p.m., because of muddy, swift waters.

In a sketchy description of the circumstances of the murder, Solomon said Miss West confessed that she entered the home, picked up the rifle where Sette was to leave it by pre-arrangement, went upstairs and shot Mrs. Sette.

She then hastily ransacked the house to make it look as though robbery was a motive, said Solomon.

"There was a lover, sex relationship" between Sette and Miss West, according to the prosecutor, who said Sette has associated with her since she was 15.

Solomon said authorities had "nothing concrete until Friday night" and that the big break came after Miss West was picked up for questioning.

According to McDonald's Restaurant owner Pete Pifer, the girl worked at McDonald's until last June. Sette was manager at the store for the past year and was employed at the store since it opened, more than two years ago. His employment was terminated this past week.

In reply to a question, Solomon said, "She implicated him as having planned and masterminded the murder, and she confessed her part. We have both a statement and confession from her."

Warrants prepared by Solomon's office were issued by Justice of the Peace Wade Tinney at 5 a.m. yesterday.

Both Miss West and Sette were arrested and lodged in the County Jail, the prosecutor said.

They will be arraigned before Circuit Court Judge Marvin Kiger tomorrow, to set bond, if any.

Solomon said the state will recommend that Sette be denied bond "because of his out-of-state affiliations." Sette came to Morgantown from White Plains, N.Y. about six years ago.

He said recognition and "a great debt of gratitude" are due the City Police, State Police and Criminal Investigation and Dangerous Drugs Division of the State Police for their work in the case.

"Based on this exhaustive, intensive, back-breaking investigation, law enforcement efforts were culminated in the arrest of these two suspects," Solomon said.

tentative opinion that the appellant was guilty, both because of the nature of the publicity surrounding the case and because of most people's natural tendency to grasp for any solution to an unsolved crime of major significance in the community. Social pressure to conclude a case and punish the guilty bears heavily upon jurors, just as it does upon judges, who constantly work under the tension of having to reconcile the accused's

---

He said officers devoted "hundreds of man-hours" to the investigation, working both night and day in a concentrated effort to solve the crime. He called it a "very competent investigation."

Transcription from WCLG FM/AM, Morgantown, West Virginia, April 26 and 28, 1975:

LONG TAPE ... CUT #1:

PROSECUTING ATTORNEY SOLOMON:

"On behalf of Chief [*sic*] Benny Palmer of the Morgantown City Police Department and myself, I'm now authorized to announce—you might say I am pleased to announce and also somewhat saddened—that there have been two arrests made in the Elizabeth Sette murder case which occurred April 1, 1975. After several weeks of intensive ... I might say back-breaking investigation ... of both the Morgantown City Police and the State Police, there have been warrants issued for the arrest of Lawrence [*sic*] Sette, the husband, on a charge of an accessory-before-the fact of first degree murder of his wife and another murder warrant, murder in the first degree, has been issued against Kathy West, seventeen years of age, who has been charged with the actual murder of Mrs. Sette. They are both now being held in the Monongalia County Jail and will be arraigned for bail Monday in front of Judge Kiger. I'd like to say that this investigation has entailed hundreds of man hours on behalf of the Morgantown City Police and the State Police, and I think that the investigation has been one of the most exhaustive police investigations in the history of this community.

LONG TAPE ... CUT #2:

SOLOMON:

"Kathy West has given us a written confession as to her participation and also her statement that Lawrence [*sic*] Sette had set his murder up with her and had planned it. It was his instance and had procured her to commit this murder."

legal rights with the community's right to impose just sanctions on criminals.

Communications are rapid throughout West Virginia, and news of the slaying would probably have appeared in the media of every county to which venue could have been changed; nonetheless, there would not have been in many other places the same daily repetition of the facts which so indelibly impressed the case upon any potential Monongalia County jury. All government officials, and particularly those who are elected, have an inveterate need for self-congratulation, possibly because congratulation is so little forthcoming from other quarters. In this case the statements of numerous police officers and the prosecuting attorney would have led any reasonable newspaper reader or TV viewer to believe that the case were open and shut, while in fact the evidence was quite contradictory and basic fairness required a high level of impartiality on the part of jurors. There is precedent, although not in West Virginia, where the issue has not recently been raised in the context of a spectacular case, that failure to grant a change of venue in the face of widespread prejudicial pretrial publicity constitutes an abuse of discretion. *See, Sheppard v. Maxwell*, 384 U.S. 333 (1966); *Estes v. Texas*, 381 U.S. 532 (1965); *Rideau v. Louisiana*, 373 U.S. 723 (1963): *Irvin v. Dowd*, 366 U.S. 717 (1961). In West Virginia, however, "a present hostile sentiment against an accused, extending throughout the entire county in which he is brought to trial, is good cause for removing the case to another county." Point 1, syllabus, *State v. Siers*, 103 W.Va. 30, 136 S.E. 503 (1927), adopted as point 2, syllabus, *State v. Dandy*, 151 W.Va. 547, 153 S.E.2d 507 (1967). From the widespread prejudicial pretrial publicity revealed in the record we can almost infer the existence at the time of trial of a present hostile sentiment against the accused, Laurence Sette, extending throughout Monongalia County; certainly, on the basis of all the facts before us, we can say such hostile sentiment did exist. Accordingly we hold that under the facts of this case the failure to

grant a change of venue is in and of itself a sufficient ground for reversal.

## II

The primary prosecution witness was the appellant's mistress, Kathy West, who made numerous inconsistent statements to the police during the course of their investigation. Finally, about April 26, 1975, Miss West signed a written confession which implicated the appellant as the mastermind of the murder plot. The appellant's counsel made a timely motion to review this written confession for cross-examination purposes before Miss West took the witness stand. He renewed his motion several times during her examination, but at each point the trial judge refused to permit defense counsel to review the confession.

We are utterly at a loss to understand why a trial judge would withhold from counsel a prior statement made by the State's most important witness. The trial judge examined the statement in chambers and concluded that it contained nothing which would exculpate the appellant, and that there was no reason to provide the statement to the defense. We have read the statement, which was subsequently made a part of the record upon a motion for a new trial, and agree with the trial judge that there was no exculpatory material in it. Accordingly, it need not have been disclosed under *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, *Moore v. Illinois*, 408 U.S. 786 (1972); *Harrington v. California*, 395 U.S. 250 (1969); *Giles v. Maryland*, 386 U.S. 66 (1967).

While it is true that some prior West Virginia cases have appeared to limit defense discovery to those items specifically listed in *W.Va. Code*, 62-1B-2 [1965], our recent case of *State v. Dudick*, W. Va., 213 S.E.2d 458 (1975), which incorporated part of the policy of *Jencks v. United States*, 353 U.S. 657 (1957) and the later federal codification of the *Jencks* rule in 18 U.S.C. § 3500 into the common law of this State, implied that criminal discovery should not be limited, absent compelling reasons

for its limitation. Miss West did not use her written confession to refresh her recollection on the stand, and thus did not bring the factual situation under consideration squarely within the rule of *State v. Dudick, supra.* Nonetheless, the liberal discovery policy of *Dudick* applies, as any inconsistency between the witness's testimony on the witness stand and her prior written statement would have been useful to the defense in cross examination. We hold today that, absent compelling circumstances, once a prosecution witness has testified, a defendant upon proper motion is entitled to have, for the purpose of cross-examination, any written statements of the witness in the State's possession. Furthermore, the defendant must be given a reasonable opportunity to study the statements and prepare cross-examination. While we recognize that *Brady v. Maryland, supra,* has been interpreted to allow the judge to determine whether material is exculpatory, we find that defense counsel is the better party in whom to repose this responsibility, insofar as the use of arguably inconsistent prior statements for cross-examination purposes is concerned.

### III

Over vehement objection of appellant's counsel (in addition to a previous motion in *limine* made in chambers) the court permitted the State to introduce evidence of the collateral and unrelated felony of participation in oral sex between the appellant and Miss West during their affair.[2] As the State had ample evidence to demonstrate a sexual relationship between the appellant and Miss West, the introduction of this evidence had no probative value whatsoever on the primary issue in the case, namely whether the appellant plotted with Miss West to commit the murder.

---

[2] At the time of the appellant's trial, oral sex of the sort the appellant and Miss West apparently engaged in was a crime under *W.Va. Code,* 61-8-13 (1923). This section was repealed in 1976 when the Legislature completely revised the law of sexual offenses in West Virginia. Under the new law, *W.Va. Code,* 61-8B-1 *et seq.* (1976), the appellant's conduct would not have been classified as criminal.

While it can be argued that the intensity of a sexual attachment has some bearing on the strength of the motive, we find the argument unconvincing, particularly as the prejudicial effect of this testimony far outweighed any possible probative value.[3] Standing alone, the error would probably have been harmless, but it was nonetheless error and is the type of classic over-trying of a case which routinely results in the reversal of an otherwise perfectly valid conviction. We do not find the introduction of this evidence error because it concerned another, unrelated felony; if the state had been able to demonstrate that this had any reasonable bearing upon the intensity of the emotional relationship and, therefore, upon the strength of the motive, it would have been admissible testimony. However the state did not even attempt to make such a connection, so we can only assume that it was introduced exclusively for its prejudicial effect.

## IV

The appellant attempted to adduce evidence from Denman Kelley concerning an encounter between Mr. Kelly

---

[3] A correct statement regarding the admissibility of collateral crimes and charges, and incorporating certain policy considerations of the A.L.I. Model Code of Evidence into West Virginia common law, is found in *State v. Thomas*, W.Va., 203 S.E.2d 445 at 456 (1974):

The control of the scope, latitude and method of introduction of arguably admissible evidence of collateral crimes and charges is, of course, vested in the trial court. Motions to introduce and motions and objections for exclusion are addressed to the sound discretion of the court. Again, the Model Code of Evidence, A.L.I., in Rule 303, sets forth the criteria for a trial court in the exercise of its discretion:

"(1) The judge may in his discretion exclude evidence if he finds that its probative value is outweighed by the risk that its admission will

. . . .

"(b) create substantial danger of undue prejudice or of confusing the issues or of misleading the jury, or

"(c) unfairly surprise a party who has not had reasonable ground to anticipate that such evidence would be offered."

and Kathy West while both were inmates in the Monongalia County jail. The proffered testimony was to the effect that Kathy West, while sobbing, announced to Mr. Kelley that the appellant had nothing to do with the murder. The State argues that the appellant failed to lay a proper foundation for the introduction of this testimony because defense counsel did not examine Kathy West about the alleged statement during cross examination. We disagree that such a foundation was essential as a precondition to the admission of this evidence, which was highly probative of the most important secondary fact in issue, namely whether Kathy West was a liar. The statement which the defense sought to introduce was a prior inconsistent statement of the State's star witness, which under traditional rules of evidence was admissible for impeachment purposes. *See State v. Spadafore*, W.Va., 220 S.E.2d 655 (1975); *State v. Carduff*, 147 W.Va. 18, 93 S.E.2d 502 (1956).

V

Finally the appellant asserts that the trial court erred by admitting into evidence photographs showing the dead victim and the area surrounding the room where she was murdered. Upon examining the photographs in question we do not find that they are overwhelmingly gruesome (except to the extent that a young woman murdered in her bed is inherently gruesome) and we find that the circumstances surrounding the crime would have some bearing upon whether the jury decided, in the event of conviction, to return a verdict with a recommendation of mercy.

While the introduction of photographs portraying a crime, the circumstances of which are basically stipulated, is always risky because the prejudicial effect may be so far in excess of any legitimate probative value as to preclude their admission, the State does have a right to emphasize the fact of the crime to the jury in as graphic a manner as possible.[4] The seriousness of the crime is

---

[4] The rule of West Virginia is that the introduction of photographs is a matter that is controlled very largely by the discretion

one of those factors which focuses the attention of the jury and is frequently relevant to the issue of whether a recommendation of mercy is in order. In the case before us we find the photographs were introduced for the legitimate purpose of emphasizing the seriousness of the crime and that their admission was not error.

### The Court's Observations

In conclusion the Court would observe that the reversal of this case is due largely to the failure of both prosecution and police officials to follow the most fundamental of common sense rules, namely to have no comment of any sort on any subject before trial, and also in part to the trial court's overly solicitous regard for the State's case.

Prosecutors and police officers who are concerned with results, rather than the appearance of spectacular police work or unremitting prosecutorial zeal, should never discuss a pending case with the press at any stage of the proceedings before the final jury verdict. While the press has a first amendment right to cover criminal investigations and trials, *Nebraska Press v. Stuart*, 427 U.S. 539 (1976) they do not have a right to statements from the State's agents. Prosecutors and police officers who discuss cases with the press merely invite changes of venues or appellate court reversals.

The members of this Court have reviewed literally hundreds of criminal records and we are unanimously of the opinion that the proper way to try a criminal case is to be responsive to all reasonable defense requests. With the exception of motions for changes of venue or contin-

---

of the trial judge and that is particularly true when the objection to their admission rests solely upon their unduly influencing the minds of the jury to the prejudice of the accused. *State v. Whitt*, 129 W. Va. 187, 40 S.E.2d 319 (1946). With respect to the trial judge's exercise of discretion, we note with approval the *Whitt* court's statement, 129 W. Va. at 194, 40 S.E.2d at 323, that in that case, "the accused could not expect less than a full disclosure of the consequences of his conduct." The same might very well be said of the accused in this case.

uances in circumstances which do not disclose the pervasive hostility demonstrated in this case, and the granting of which would obviously grind the entire process to a halt, there is hardly a discovery motion, proffer of testimony, motion to suppress inflammatory testimony or exhibits, or any other motion which the defendant can make, except those for which there are no good faith legal arguments, which if granted will have any effect adverse to the State upon the outcome of a criminal case. Juries are basically intelligent and can usually separate the guilty from the innocent.

There are some circuits in this State in which there are almost no reversals of criminal trials, and that is because the trial judge grants every reasonable request relating to discovery, rulings in *limine*, evidence, and other discretionary matters during the trial. We are now not speaking of pretrial constitutional challenges to the sufficiency of the process by which the defendant is brought to trial, nor constitutional challenges to the admissibility of the State's evidence. We are talking about discretionary motions during the course of trials, the granting of almost all of which would greatly enhance the ability of a conviction to withstand appellate review.

For the reasons set forth above the judgment of the Circuit Court of Monongalia County is reversed and the case is remanded for a new trial.

*Reversed and remanded*
*for a new trial.*