334 S.E.2d 600

**STATE of West Virginia**

v.

**Calvin CLEMENTS.**

**No. 16243.**

Supreme Court of Appeals
of West Virginia.

March 27, 1985.

Rehearing Denied June 11, 1985.

Certiorari Denied Oct. 7, 1985.

See 106 S.Ct. 165.

464

Timothy F. Cogan and William C. Gallagher, O'Brien, Cassidy & Gallagher, Wheeling, for appellant.

S. Clark Woodroe, Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

This is an appeal from a judgment of the Circuit Court of Hancock County, which found the appellant, Calvin Clements, guilty of one count of voluntary manslaughter and one count of first degree murder, with no recommendation of mercy.

On August 18, 1981, two young women, Belinda Harper, 20, and Paula Gray, 17, disappeared from the El Villa Laundromat in Wheeling. Their decomposed remains were found eight months later in a garbage dump near a house in which the appellant lived. Yellow plastic tubing was found tied around Belinda Harper's neck and her skull was fractured.

Shortly after the disappearance of the two girls, the police, acting on an anonymous tip, went to see the appellant at his residence. He admitted to being at the laundromat and seeing the victims on the night of their disappearance. He also provided police with a taped statement. The appellant's van was searched, with his consent, and blood was found within on an afghan. This blood later was matched with the blood of members of the family of Belinda Harper.

After the discovery of the two girls' bodies, the appellant was arrested on an unrelated federal charge. Agents of the Bureau of Alcohol, Tobacco and Firearms ("A.T.F.") obtained a search warrant for the appellant's house. The A.T.F. agents were assisted in the search by officers of the Wheeling Police Department. During the search, yellow plastic tubing, similar to that found around Belinda Harper's neck, was found partially buried in the ground near the residence.

■ The grand jury indicted Calvin Clements on July 1, 1982, on two counts of murder and two counts of kidnapping. Police arrested him the same day. The appellant was first tried in Ohio County, before a Cabell County jury, and found guilty on all counts. This verdict was overturned by the trial court because of improper conduct of the Ohio County Sheriff's Department. The appellant, upon a granted motion for change of venue, was retried in Hancock County and found guilty of the first degree murder of Belinda Harper and guilty of the voluntary manslaughter of Paula Gray. The trial court sentenced appellant to life without mercy and five years, respectively, the sentences to be served consecutively.[1]

Calvin Clements appeals to this Court citing twenty-eight assignments of error, which we now address.

### I.

The appellant's first contention is that he should not have been deemed to have waived his protection against double jeopardy by moving for a new trial, because the motion was coerced by prosecutorial misconduct. The misconduct cited by the appellant included racial slurs uttered by a deputy sheriff in the presence of the jury, the sheriff taking several members of the jury on an unauthorized view of the laundromat, and a second deputy having a conversation with members of the sequestered jury.

■ A defendant's request for a mistrial removes any barrier to reprosecution unless the defendant can show that the prosecutor or the court was guilty of overreaching. Syl. pt. 1, *State ex rel. Betts v. Scott*, 165 W.Va. 73, 267 S.E.2d 173 (1980); *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267, 276 (1976). The actions of the sheriff's department in this case were not the actions of the prosecutor or the court, and, therefore, the defendant does not qualify for this exception. Therefore, double jeopardy does not apply.

### II.

■ The appellant also asserts that the State failed to prove that venue existed in Ohio County where he was indicted. An

1. In our opinion, the facts sufficiently support the jury verdicts returned in this case, and the verdicts were not inconsistent.

important argument in support of this assertion is that the State could not prove where the two women actually died. The two were last seen alive in Ohio County. The appellant's van was spotted later in Marshall County, and the women's bodies were found in Brooke County. Our statute regarding venue provides that where a crime is committed in more than one county, venue exists in any county in which a substantial element of the offense occurred. W.Va.Code § 61–11–12 (1984). In this case the two girls were last seen at a laundromat in Ohio County. The criminal scheme appears to have started by removing them to a more secluded spot. This is evidence that the intent to kill was formed in Ohio County. Intent is a substantial element of murder. *See State v. Hertzog*, 55 W.Va. 74, 80, 46 S.E. 792, 794 (1904). We, therefore, hold that the State adequately proved venue in Ohio County. *See, e.g., State v. Smith*, 92 N.M. 533, 537, 591 P.2d 664, 668 (1979).

## III.

Due to the nature of the case, there was considerable pretrial publicity in Hancock County. The appellant, therefore, requested a change of venire, which was denied.

■ The grant or denial of a motion for a change of venire is a matter within the sound discretion of the trial court, and the court's ruling will not be disturbed unless it clearly appears that this discretion has been abused. *State v. Sette*, 161 W.Va. 384, 388, 242 S.E.2d 464, 468 (1978). In *Sette* we found reversible error where widespread pretrial publicity was evidenced by the fact that almost 50% of the prospective jurors had already formed an opinion of the case.[2] In the present case, only thirteen of the sixty-five prospective jurors had already formed an opinion. In general there does not appear to be as much of a showing of widespread hostility toward the defendant in this case as in *Sette*. The trial judge did not abuse his discretion in

denying the appellant's motion for a change of venire.

## IV.

■ The appellant suggests that the following argument by the prosecutor constituted an impermissible "golden rule argument":

Let me submit to you that you will only have to decide, consider Belinda Harper and Paula Gray. Here you've got two young girls, 17, Paula Gray was 17, Belinda Harper was 20. They were working girls. They worked at Elby's as waitresses. They are just trying to start their life. They are not rich people. They are out there trying to get started in life. Belinda Harper was living with her sister, as was Paula Gray. Paula Gray had just shortly moved out of her parents' house and in with two friends within a month before she disappeared. Consider the consequences in the termination of those two young lives. I'd also ask you with regard to the eligibility for parole to consider the impact that this has had on the families of those two girls. One further thing, when you consider that question I would like for you to consider the type of deaths those two girls went through. I would like you to consider Belinda Harper, the ligature around her neck, her hands bound behind her back with her head bashed in, and what Paula Gray must have gone through.

(Record at 1835–36). This is not a "golden rule" type argument. The distinguishing feature of a golden rule argument is that the jurors are urged to put themselves in the place of the victim or the victim's family. *See, e.g., Black's Law Dictionary* 623 (5th ed. 1979). The State may properly call the jury's attention to the plight of the victims and the nature of the crime so long as it does not take the extra step and ask the jury to "put yourself in the place of...." *Compare Keathley v. Chesa-*

---

**2.** *State v. Sette* concerns a change of venue and not a change of venire. However, these are two remedies designed to cure a common ill. The rules governing the grant or denial of a change

of venue would also apply to a change of venire. *See State v. Bail*, 140 W.Va. 680, 688, 88 S.E.2d 634, 641 (1955) (rules governing change of venue applied in change of venire case).

*peake & Ohio Ry. Co.*, 85 W.Va. 173, 185, 102 S.E. 244, 249 (1920) (argument which had the "put yourself in the place of" language found to be improper), *with Ellison v. Wood & Brush Co.*, 153 W.Va. 506, 513–14, 170 S.E.2d 321, 327 (1969) (argument which did not have the "put yourself in the place of" language found not to be objectionable).

## V.

The appellant claims that the trial court improperly admitted a tape recording of an interview of the appellant by Wheeling Chief of Detectives Joseph Davis. Appellant asserts that this tape did not meet three of the requirements for admissibility set out by this Court in *State v. Harris*, 169 W.Va. 150, 286 S.E.2d 251 (1982).[3] Specifically, the appellant alleges that there were changes and deletions to the recording, that all speakers were not identified, and that there was no showing of voluntariness.

▮ As to the appellant's first contention, that there were additions and deletions to the record, there was no objection made to this effect at trial. Therefore, it is not properly before us on appeal. *Konchesky v. S.J. Groves & Sons*, 148 W.Va. 411, 414, 135 S.E.2d 299, 302 (1964). As to the appellant's contention that all speakers were not identified, the record reflects that the principal speakers were identified by Lt. Davis, although some unidentified children were crying in the background. A reasonable reading of *State v. Harris* requires only that the principal speakers be identified, not necessarily every noise. That requirement was satisfied in this case. Finally, despite the appellant's claim otherwise, there was a showing of voluntariness in the record. The appellant replied affirmatively when he was asked if he wished to keep talking to the officers. (Record at 1047). Therefore, the requirements of

*State v. Harris* were met, and we find no error.

## VI.

An important piece of evidence against Calvin Clements was a section of yellow tubing found partially buried in the ground near his residence. This tubing was later matched with tubing which was found around Belinda Harper's neck. The following events led to the discovery of the tubing: On April 19, 1982, Calvin Clements was arrested on an unrelated federal firearms charge. Agents from the Bureau of Alcohol, Tobacco and Firearms ("A.T.F.") obtained a search warrant from Ohio County Circuit Judge Arthur Recht for a search of appellant's residence. Despite the fact that the residence was outside their jurisdiction, detectives for the City of Wheeling were requested to accompany the A.T.F. agents in their search. During the approximately one-half hour search, the firearm sought by the A.T.F. agents was found inside the house. A Wheeling police detective also found the yellow tubing, partially buried in the ground near the residence. The appellant raises two questions: (1) Did the Wheeling police officers have the authority to aid in the search by the A.T.F. agents in an area outside their jurisdiction, and (2) Was the yellow tubing the product of an illegal search?

▮ The appellant's reliance on the fact that the officers were outside their jurisdiction when they were aiding the A.T.F. agents in the search of the appellant's residence was misplaced. Federal agents may take other persons along to assist them in executing a warrant, so long as the officer who obtained the warrant is present and acting in the execution of the warrant. 18 U.S.C.A. § 3105 (1969). The officers of the Wheeling police were lawfully acting as assistants to the federal officers, and had

3. The requirements set forth in *State v. Harris* are:

(1) a showing that the recording device was capable of taking testimony; (2) a showing that the operator of the device was competent; (3) an establishment of the authenticity and correctness of the recording; (4) a showing

that changes, additions or deletions have not been made; (5) a showing of the manner of the preservation of the recording; (6) an identification of the speakers; and (7) a showing that the testimony was voluntarily made without any kind of inducement.

169 W.Va. at 154, 286 S.E.2d at 255.

authority to aid in the search. *See, e.g., Watson v. Commonwealth*, 433 S.W.2d 884, 886 (Ky.1968).

 Although the officers had the right to be in and around the appellant's house, the yellow tubing was not an item listed on the search warrant. The law is clear that the police may not use an initially lawful search as a means to conduct a broad, warrantless search. *See, e.g., State v. Moore*, 165 W.Va. 837, 272 S.E.2d 804, 814 (1980). Therefore, for the officers to have legally seized the tubing, an exception to the warrant requirement must apply. In this case, the plain view exception permitted seizure of the evidence. The following requirements must be met for the plain view exception to apply:

(1) The police must observe the evidence in plain sight without the benefit of search. [i.e., without invading one's reasonable expectation of privacy];

(2) The police must have a legal right to be where they are when they make the plain sight observation; and

(3) The police must have probable cause to believe the evidence seen constitutes contraband or fruits, instrumentalities or evidence of a crime.

*State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50, 54 (1980).

 The requirements set out in *State v. Stone* were met in this case. The tubing was sticking out of the ground near the house in plain sight. As discussed above, the police officer had a right to be on the appellant's property, and it was reasonable to search the area immediately surrounding the house for the firearm sought by the federal officers. Finally, the tubing resembled other tubing found around the neck of Belinda Harper, giving probable cause to believe that this tubing would be evidence of a crime. Therefore, the officer's seizure of the yellow tubing falls under the "plain view" exception to the warrant require-

ment and the trial court properly admitted the tubing into evidence.

## VII.

 A critical element of the second trial was a comparison of blood found in the appellant's van with that of members of Belinda Harper's family. This evidence was not offered by the prosecution at the first trial. The defendant asserts that the introduction of this evidence was improper unless the evidence was newly discovered. We hold that, where a second trial is ordered, the fact that the prosecution refrained from presenting an item of evidence at the first trial is not grounds for an objection to its admission in any subsequent trial. *See United States v. Mischlich*, 310 F.Supp. 669, 672 (D.N.J.1970).

 Appellant also raises the issue of surprise testimony regarding the blood. The State may not, of course, unfairly surprise a defendant with evidence that it had a duty to disclose. This rule applies to the State in any trial of a criminal defendant. The defense was forewarned that the State intended to call an expert to testify that the blood found in the van was similar to the blood found in Belinda Harper's family. Nevertheless, the defendant asserts that the State went beyond the scope of this disclosure by putting on evidence that only 2.4 percent of the population has this blood type. We do not think that the expert's testimony was such a deviation from what the defense was told that the trial court could not in a reasonable exercise of its discretion have allowed this evidence to be introduced. Therefore, we find no error.[4]

## VIII.

 At trial, the defendant moved for separate trials of the four offenses (two counts of kidnapping and two counts of murder), and he cites as error the trial court's refusal to do so. All offenses

---

**4.** The defendant also objects to a portion of the testimony of Dr. Irvin Sopher on the grounds that the doctor drew conclusions that could be made by the average person concerning events about which he had no personal knowledge. The defendant, however, made no such objec-

tion to the court below. It is well settled law in West Virginia that unless an objection is raised at the trial court, this Court will presume the matters therein to have been proper. *Konchesky v. S.J. Groves & Sons*, 148 W.Va. 411, 414, 135 S.E.2d 299, 302 (1964).

based on the same act or acts constituting part of a common scheme or plan must be charged in the same indictment or information in a separate count for each offense, W.Va.R.Crim.P. 8(a), and tried in the same trial. However, a defendant faced with multiple counts may move for severance. This motion should be granted if the court in its discretion finds that the defendant would be prejudiced by a joinder of the counts. W.Va.R.Crim.P. 14(a); *State v. Cunningham,* 170 W.Va. 119, 290 S.E.2d 256, 259 (1981).

 Applying the law as stated above to the facts in this case, we cannot say that the trial court abused its discretion in denying the appellant's motion. The four counts were all based upon actions that formed a part of a common scheme or plan. Evidence that tended to prove or disprove one count would similarly go to prove or disprove the other three counts. Therefore, severance of the four counts would have resulted in merely four separate trials involving the same set of facts. It is difficult to see how the defendant was prejudiced by a single, combined trial. The trial court properly exercised its discretion in denying the appellant's motion to sever.[5]

### IX.

 Before his trial in this matter, the defendant had been convicted of a violation of 18 U.S.C. § 922(a)(6) (1976), which involves a false statement or presentation of a false identification in connection with the acquisition of a firearm.[6] The trial court allowed the prosecution to introduce evidence of this conviction to impeach the appellant's credibility, even though appellant had not put his character in issue. Appellant contends that the prior convic-

tion should have been excluded under the rule set out by this Court in Syl. pt. 1 of *State v. McAboy,* 160 W.Va. 497, 236 S.E.2d 431 (1977):

> In the trial of a criminal case, a defendant who elects to testify may have his credibility impeached by showing prior convictions of perjury or false swearing, but it is impermissible to impeach his credibility through any other prior convictions.

Although this syllabus appears to limit the crimes by which a defendant may be impeached to only perjury or false swearing, this was not our true intention in *McAboy.* The following paragraph is helpful in understanding our intention in that case:

> Another exception to the general prohibition against impeachment of the defendant by evidence of his prior convictions which we believe is appropriate is a prior conviction of perjury or false swearing. *Conviction of these crimes goes directly to the credibility of the defendant* and, in our judgment, their relevancy has a priority over their possible prejudicial effect. (footnotes omitted, emphasis added).

160 W.Va. at 508, 236 S.E.2d at 437. Our intention in *McAboy* was to limit the impeachment by prior conviction of a defendant who has not placed his character in issue to only those crimes which would relate directly to the credibility of that defendant. In order to clarify *McAboy* we now hold that in addition to convictions of perjury and false swearing, criminal convictions of making false statements with intent to deceive may also be shown. Thus, Syllabus Point 1 of *McAboy* is modified as follows:

> "In the trial of a criminal case, a defendant who elects to testify may have his

---

5. We also find no merit and dismiss without discussion the appellant's contention that the failure to bifurcate the trial for separate hearings on the insanity plea and on the merits of the case was error.

6. That section provides that it shall be unlawful:
 ... for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed deal-

er, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended to or likely to deceive such importer, manufacturer, dealer, or collector, with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

credibility impeached by showing prior convictions of perjury or false swearing and criminal convictions of making false statements with intent to deceive, but it is impermissible to impeach his credibility through any other prior convictions." Because 18 U.S.C. § 922(a)(6) meets this requirement the lower court was correct in its ruling to allow impeachment by that offense.

## X.

The appellant also presented, in his list of twenty-eight assignments of error, several miscellaneous points not requiring lengthy discussion.

■■■ The indictments against the appellant for kidnapping stated that the purpose for the kidnappings was to secure the money that the victims were carrying. However, the State put on evidence that the purpose for the kidnapping of each victim was to take their money and possessions, as well as to demand sexual concessions from them. The defendant's motion in limine on this point was denied. This point, however, becomes moot when it is noted that the defendant was acquitted of both kidnapping charges.[7] The evidence relating to a sexual motive clearly was admissible in explaining the motive for the murder and, therefore, would have been admissible regardless of the kidnapping charges.

■■■ The appellant claims that due to the pretrial publicity of the case he should have been granted additional peremptory challenges above the nine which he had. Although the trial court could have granted further peremptory challenges in its discretion and for good cause shown, it was not error to refrain from so doing. *See* W.Va. R.Crim.P. 24(b)(2).

■■■ The appellant also claims that the prosecution used its peremptory challenges to strike jurors by race. The record indicates that the State struck a white female, a black male, and a black female. It would not have mattered, however, if the State had used its strikes entirely along racial lines. The very concept of a peremptory challenge does not permit inquiry into the reasons for a strike. Thus, the United States Supreme Court has held that the United States Constitution does not require an examination of a prosecutor's exercise of peremptory challenges, and specifically that the striking of Blacks in a particular case is not a denial of equal protection of the laws. *Swain v. Alabama,* 380 U.S. 202, 221, 85 S.Ct. 824, 836–37, 13 L.Ed.2d 759, 773 (1965).

■■■ The appellant asserts that the indictments should be dismissed because several items of improper evidence were presented to the grand jury. This evidence included a videotape of the autopsies on the decayed bodies of the victims and a statement by the prosecutor that the defendant had a history of violence and a history of forcible rape. The grand jury, however, was not designed to be the ultimate finder of facts. The presumption is that every indictment is found upon proper evidence. If anything improper is given in evidence before a grand jury, it can be corrected in the trial before a petit jury. *See, e.g., Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408–09, 100 L.Ed. 397, 402 (1956). Thus, any evidentiary errors in the prosecution's case before the grand jury were not cause for reversal, where the errors were not repeated before the petit jury.

■■■ During the course of their investigation, the police searched the appellant's van with his consent. An inventory is not required in a warrantless search in West Virginia. *Cf.* W.Va.Code § 62–1A–4 (1984) (inventory required with search pursuant to a warrant). Despite this an inventory was prepared and a piece of bloodstained foam, which would later become an important piece of evidence in the trial, was inadvertently omitted. The appellant contends that this omission mandates suppression of the evidence. We disagree. Where no inventory was required, but the police voluntarily prepared one, the defendant

---

7. We express no opinion as to the substantive merits of the appellant's argument.

was not prejudiced, no matter how poorly the police completed their task.[8]

■ The appellant assigns as further error the fact that the trial court refused to grant all of the requested bill of particulars. Apparently, the only information which was withheld from the defense was confidential under the standard set forth in *State v. Tamez*, 169 W.Va. 382, 290 S.E.2d 14, 18 (1982) (identity of informant), or items which were work product. The trial court, therefore, was correct in its ruling.

■ Another objection stems from the State's attempt to introduce evidence of several "collateral crimes" of rape. This offer was made in open court with the public, but not the jury, present. Although the evidence was held inadmissible, the appellant claims that this public release of information about possible prior crimes prejudiced his right to a fair trial. The question, however, is not whether the public in general was prejudiced against the defendant, but whether the jury was prejudiced against the defendant. While it may have been better for the prosecutor to have presented this evidence in an *in camera* hearing before the court alone, any error is harmless where the appellant has not shown that the evidence may have prejudiced the jury.

■ We also find no merit in the appellant's contention that the prosecution should have limited its use of the term "body bags,"[9] and that there was an oppressive overmatch favoring the prosecution.[10]

Finally, the appellant suggests that there are several errors in this case which would not be cause for a reversal when considered separately, but the cumulative effect of which would mandate a retrial. The appellant in concluding his brief states, "The errors in this case are intimately, inextricably, intrinsically intertwined." An inference of indiscretion in the inferior inquest intrigues us, but any inadequacies were insignificant and inconsequential and, therefore, interference would be incorrect.

There being no errors of the trial court mandating a reversal, the judgment of the trial court is affirmed.

Affirmed.

---

8. Our holding might be different if the omission was coupled with a showing of surprise, which was not present here. The defense was informed about the blood prior to trial.

9. During the course of the trial, several prosecution witnesses made reference to the term "body bags." The appellant contends that the witnesses should have been limited in the number of times they could use this term and that failure to do so by the trial court was error. We disagree. In the trial of the brutal murder of two young women, it is unreasonable to expect the State to put on a case which reads like a nursery rhyme. The court should step in only where the inflammatory nature of these comments would prejudice the jury in such a way as to outweigh any probative value of the statements. *Cf. State v. Young*, 166 W.Va. 309, 273 S.E.2d 592, 604 (1980) (evidence of threat excluded where inflammatory and prejudicial effect outweighed probative value). The term "body bags" is not so inflammatory a term that the trial court abused its discretion in refusing to order the prosecution to limit its use.

10. Although this Court will declare such an overmatch if there is a showing on the record that defense counsel failed to object to incompetent evidence of a highly prejudicial nature introduced by the prosecution at trial, or if there is other similar evidence of gross incompetence or inexperience, *State v. Pratt*, 161 W.Va. 530, 535–36, 244 S.E.2d 227, 230–31 (1978), the record below discloses no such gross defects in the defense.