# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 11-1765** (McDowell County 08-F-118)

**Robert Johnson,**
**Defendant Below, Petitioner**

**FILED**

April 12, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Robert Wayne Johnson Jr., by counsel Natalie N. Hager, appeals his conviction of murder in the first degree and his sentence of life in prison with the possibility of parole. The State of West Virginia, by counsel Sidney H. Bell, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and the legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 18, 2008, petitioner and his father argued with their neighbor, Joseph Edward Mallory ("decedent"), at decedent's home about a gun decedent sold to petitioner's father. Later that day, decedent's brother-in-law, Bobby Parks, delivered $25 to petitioner and his father in an effort to quell the dispute. In the early morning hours of January 19, 2008, petitioner's step-mother called the police to report that petitioner had told his ex-wife that he may have killed a man by cutting his throat and stabbing him in the head. Petitioner's stepmother also reported that, after the murder, petitioner had driven to North Carolina in his father's pick-up truck. The police investigated and discovered decedent dead in his home; he had more than thirty stab wounds to his face, head, and body.

Petitioner was arrested for murder in North Carolina on January 20, 2008. Law enforcement officials impounded the truck petitioner used to drive to North Carolina. The truck contained a blood smear on the seat and a bloody tee shirt that contained decedent's DNA.

Petitioner was indicted on four counts: murder in the first degree, nighttime burglary by breaking and entering, nighttime burglary by entering without breaking, and petit larceny. On June 10, 2009, following a three-day trial, a jury convicted petitioner of first degree murder and recommended mercy. The jury acquitted petitioner on the other three counts. The circuit court sentenced petitioner to life in prison with the possibility of parole. Petitioner was resentenced on December 1, 2011, so that he could file this appeal.

1

On appeal, petitioner argues, at length, his claim of ineffective assistant of trial counsel.

This Court's ability to review a claim of ineffective assistance of counsel is very limited on direct appeal. Such a claim is more appropriately developed in a petition for writ of habeas corpus. Syl. Pt. 11, *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995); Syl. Pt. 10, *State v. Triplett*, 187 W.Va. 760, 421 S.E.2d 511 (1992). Accordingly, we decline to rule on any claims of ineffective assistance of counsel in the context of this direct appeal and express no opinion on the merits of petitioner's ineffective assistance claims.

Petitioner next argues that the State failed to prove that he had the requisite mental state to support his conviction for murder in the first degree. Petitioner argues that less than three weeks before the murder, he attempted suicide by cutting his wrists and was admitted to a psychiatric facility for treatment. Petitioner highlights that, at trial, his ex-wife testified that in the days following the murder, petitioner was "like a child" and "in his own little world."

Petitioner's argument is without merit. In Syllabus Point 1 of *State v. Joseph*, 214 W. Va. 525, 590 S.E.2d 718 (2003), we held that a diminished capacity defense requires expert testimony that, at the time of the crime, a defendant had a mental disease or defect that rendered him incapable of forming the requisite mental state of the crime charged. However, in the case at bar, petitioner did not rely on an insanity defense and did not present expert testimony that he suffered from a mental disease or defect at the time of the crime.

Petitioner's third argument is that the State presented insufficient evidence to sustain his conviction. Petitioner argues that the State's experts did not take the necessary steps to identify decedent's attacker and presented "mere circumstantial evidence" to connect petitioner to the crime. Specifically, petitioner claims that the police failed to perform DNA testing on any of the blood found at the scene; failed to take scrapings from the victim's fingernails; failed to look for hair or skin cell evidence; and failed to take fingerprints. Petitioner also claims that the decedent rode in the truck petitioner drove to North Carolina many times prior to his death and therefore, decedent's blood could have gotten in the truck and on the tee shirt at any time prior to the murder.

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). In viewing the evidence in the light most favorable to the prosecution, we find that any rational juror could have found that the State proved the essential elements of murder in the first degree beyond a reasonable doubt. The jury heard that petitioner and his father engaged in a heated argument with decedent the day before the murders; that petitioner was still angry with decedent when decedent's brother-in-law paid petitioner $25 later than same day; that the truck petitioner drove to North Carolina

2

contained a blood stain on the seat and a bloody tee shirt containing decedent's DNA; that petitioner told his ex-wife that he had cut a man's throat and stabbed him in the head; and that decedent died from stab wounds to his face, head, and body.

Petitioner's fourth argument is that the circuit court erred in denying his motion for a mistrial made when it was discovered that a key State witness, Robert Parks, was allowed to testify after he sat unnoticed in the courtroom through most of the State's opening statement. Mr. Parks was decedent's brother and the person who gave petitioner and petitioner's father $25 in an attempt to resolve their dispute with decedent. Petitioner argues that Mr. Parks' presence in the courtroom was highly prejudicial given that all the other witnesses were sequestered and that Mr. Parks was the State's first witness and may have tailored his testimony to fit the State's version of events.

We review the circuit court's decision to grant or deny a motion for mistrial under an abuse of discretion standard. *State v. Thornton*, 228 W.Va. 449, 720 S.E.2d 572 (2011). The circuit court denied petitioner's motion for a mistrial because, after questioning Mr. Parks, it was satisfied that Mr. Parks, who is an elderly man with impaired hearing, either did not hear the State's remarks, or, if he did, did not learn anything about the case that he did not already know. Therefore, the circuit court did not abuse its discretion in denying petitioner's motion for a mistrial.

Petitioner's fifth argument is that the circuit court erred in overruling his objections to the following comments made by the State during its opening statement: "[P]eople who have had their homes broken into or had crimes committed in their homes take it especially hard. It's just an invasion of the place where you expect to be safe." The prosecutor also said: "As you understand, people expect that the home is one place where you ought to be safe and secure, protected from people who may want to do you harm, and that leads us to the evidence in this case." Petitioner avers that these statements violated the prohibitions found in *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995).

In Syllabus Point 5 of *Sugg*, we held that "[a] judgment of conviction will not be set aside because of improper remarks made by a prosecuting attorney to a jury which do not clearly prejudice the accused or result in manifest injustice."

> Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

*Id.* at Syl. Pt. 6. Applying the four-part test in *Sugg*, we find that the State's two brief comments first, could not have mislead the jury because decedent was, in fact, murdered in his home; second, were not extensive; third, had nothing to do with petitioner's guilt or innocence; and fourth, were unlikely to have diverted the attention of the jury to extraneous matters. Thus,

3

because petitioner was not clearly prejudiced by the State's comments and because no manifest injustice resulted as a result of the comments, we find that the circuit court did not err in overruling petitioner's objections.

Petitioner's sixth argument is that he was denied a fair trial due to prejudicial pretrial publicity in McDowell, Mercer, and Raleigh Counties. Petitioner claims that the local newspapers and television and radio stations published stories about the murder, described the case in detail, and blamed petitioner for the murder.

> """To warrant a change of venue in a criminal case, there must be a showing of good cause therefor, the burden of which rests on the defendant, the only person who, in any such case, is entitled to a change of venue. The good cause aforesaid must exist at the time application for a change of venue is made. Whether, on the showing made, a change of venue will be ordered, rests in the sound discretion of the trial court; and its ruling thereon will not be disturbed, unless it clearly appears that the discretion aforesaid has been abused." Point 2, Syllabus, *State v. Wooldridge*, 129 W.Va. 448, 40 S.E.2d 899 (1946).' Syllabus Point 1, *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978)." Syl. pt. 1, *State v. Derr*, 192 W.Va.165, 451 S.E.2d 731 (1994).

Syl. Pt. 6, *State v. Satterfield*, 193 W.Va. 503, 457 S.E.2d 440 (1995). To prevail on a motion for a change of venue due to pretrial publicity, a defendant must show

> "'[a] present hostile sentiment against an accused, extending throughout the entire county in which he is brought to trial, is good cause for removing the case to another county.' Point 2, Syllabus, *State v. Dandy*, 151 W.Va. 547, 153 S.E.2d 507 (1967) quoting Point 1, Syllabus, *State v. Siers*, 103 W.Va. 30, 136 S.E. 503 (1927)." Syllabus Point 2, *State v. Sette*, 161 W.Va. 384, 242 S.E.2d 464 (1978).

*Satterfield* at Syl. Pt. 7.

In the case at bar, petitioner fails to show a present hostile sentiment against him throughout McDowell County, where his trial was held. Although petitioner claims his case was the subject of extensive media attention, he cites to only one story, published in Beckley's *Register Herald* a full year and a half before petitioner's trial. Further, petitioner did not seek a change of venue due to pretrial publicity and, during voir dire, no prospective juror acknowledged hearing or reading about the case prior to trial.

Petitioner's seventh and final argument is that he was denied a copy of his trial transcript in violation of West Virginia Code § 51-7-7, which states as follows:

> [i]n any case wherein an indigent person has filed a notice of intent to seek an appeal or writ of error as specified in section four [§ 58-4-4], article four, or section four [§ 58-5-4], article five, chapter fifty-eight of this Code, the court, or judge thereof in vacation, upon written request of such convicted person or his counsel, presented within sixty days after the entry of such judgment, shall, by

4

order entered of record, authorize and direct the court reporter to furnish a transcript of the testimony and proceedings of the trial, or such part or parts thereof as such convicted person or his counsel shall have indicated in his request to be necessary, to the convicted person, without charge to him, for use in seeking his appeal or writ of error, and the cost of such transcript whether the case be one of misdemeanor or felony, shall be certified by the judge of the court to the auditor of the State and shall be paid out of the treasury of the State from the appropriation for criminal charges.

We find that petitioner was not denied a copy of his trial transcript as contemplated by West Virginia Code § 51-7-7. In his brief on appeal, petitioner admits that his counsel received a free transcript of the testimony and proceedings of his trial. Because petitioner does not claim to have suffered any prejudice as a result of his trial transcript being sent to his counsel, we find no error.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 12, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

5